Good morning, Your Honors. May peace accord. I'm William Staudenmayer. I represent the Central Arizona Water Conservation District, often referred to by its acronym CAWCD. I hope to reserve several minutes of my time for rebuttal, and I realize that's my responsibility. CAWCD operates, maintains, and pays for the Central Arizona Project. It's a 300-plus-mile canal system, a canal sort of understates, and it's an enormous aqueduct that moves a million and a half acre-feet, that's more than half of Arizona's entire Colorado River water supply, into Central Arizona, and it serves that water supply to more than 5 million Arizonans. That's more than 80 percent of the state's population. Because it does that, and because the CAP is the only means, the only physical means by which that water can be moved from the river, which forms its western border, into the population centers of the state, CAWCD performs a critical governmental function and therefore is an arm of the state of Arizona, entitled to 11th Amendment immunity. This court has a long-established five-factor balancing test that it applies. But does the state think you're an arm of them? Well, as your Honor is no doubt aware, one agency in the state, the Arizona Department of Water Resources, argues that CAWCD is not. What matters, though, is the way, and this is one of the standards this court has repeatedly applied, is how does state law view the entity? While the Department of Water Resources has expressed its views as a state agency, it is just one agency in the state. In fact, by my count, it's one of at least four entities in the state of Arizona that have some part of the management responsibility for water in the state. Right, but it points out that your client is a municipal corporation involving just three counties in Arizona. Yes, your Honor, and it is... Not the state as a whole, is their point. And that's correct, your Honor, it serves three counties. But that also understates the reality. Those three counties are the population centers of Arizona, and they have been for decades. It has always been the purpose of the state of Arizona, and this is well-documented historically and through cases that this court has decided, that Arizona needed to find a way to move water from the Colorado River where it exists to the place where most Arizonans live, and that's the counties that are served by CAWCD. And it was formed as a district to satisfy the requirements of federal law, and that is the Colorado River Basin Project Act. The Basin Project Act required that... It authorized the Secretary of the Interior to require that there be a district formed to repay the cost of constructing the CAP. It's the only way the CAP was constructed. Without that district being formed, without CAWCD, the United States would never have released the funds and built the Central Arizona Project. So there's a very clear line of necessity between Arizona wants this water for its population centers, CAWCD must be formed in order to secure the federal funding to build this project. So can we even consider your functional liability argument? It appears you didn't argue it in the district court. Your Honor, I believe it was. And I can only read the record as you can because I was not trial counsel, but my understanding is that the argument was raised. I acknowledge that it wasn't raised by specific reference to the Stoner case. So is there anything in the record to suggest Arizona would step in and pay a money judgment against CAWCD? I don't think there's anything in the record that proves that point, but I look at this and... Or even suggest it. Well, Your Honor, it will come as no surprise to you that I view the Alaska Railroad case as the most critical analogy here. And in that case, there was no suggestion. In fact, there were two state statutes in Alaska that expressly forbid any judgments against the state of Alaska, and yet this court used that functional liability test to say Alaska is functionally liable because of the critical importance of that railroad. I think the very same analysis applies here. CAWCD is the only entity created by the state of Arizona that has the authority to manage and operate and pay for this system. Well, but doesn't the Arizona revised statute, Section 45-2401, which recognizes chronic shortages of the Colorado River, indicate that the state would rely on its other water resources instead of stepping in to pay a money judgment against you? Well, Your Honor, that statute doesn't say one way or another what the state would do. And if you view it from this perspective, and we certainly do, this is nearly half of the municipal water supply available to more than 80% of the citizens of the state. There is no way that the state could do without that quantity of water. So if CAWCD were impaired in its ability to perform under the two relevant contracts, that is the master repayment contract, which, by the way, allows the United States to cease water deliveries to central Arizona if CAWCD cannot pay its bills when due for a period of 12 months or more, the state of Arizona would face the stark choice of do we let that canal go empty and 80% of our citizens suddenly use half of the water they used to use, or do we step in and make sure CAWCD can satisfy those obligations? To me, there's only one credible choice. The state would have to do something. Now, what it would do and how it would do it, we don't know, but the state is not going to sit idly by and ignore the loss of half of that municipal water supply. So under the five factors in the Mitchell test, is there one that is to be held more significant than the others? Because the one that strikes me as really remarkable is the status under the Constitution, that Arizona's Constitution calls public improvement districts political subdivisions of the state, right? Yes. And then, of course, you have to jump into Mount Healthy and decide whether you are a political subdivision or not. Well, I don't view Mount Healthy as saying all political subdivisions are not arms of the state. What it said is Ohio law draws a clear expressed distinction between political subdivisions, school districts in that case, from the state. There's no similar statute in Arizona. Here, while it was created as a district, it was, bear this in mind, was created solely to satisfy the requirements of the Basin Project Act. So it is what it is because of federal law. But that doesn't end the analysis. It's one aspect of five factors. The first two factors, you need to go to your... And I guess I did give you a compound question, yes. So does one factor weigh more significantly than the others? Well, this Court, again, it will come as no surprise to you, this Court has repeatedly said the first factor is predominant. But it has also said the first two factors have to be, they cannot be divorced. But you concede the last three factors, right? I would put this nuance on it. The third factor, sue or be sued, has, I think, been marginalized by the College Savings Bank case. There they said, the United States Supreme Court said the 11th Amendment is not waived by a state allowing itself to sue and be sued. And for that matter, the Department of Water Resources, which I don't think anyone debates is an arm of the state, is also able to sue and be sued. So I think that's not really a relevant factor anymore, honestly. And you can also acquire property, right? You can acquire property, but there's an important limitation there. You can only acquire property for the specific purposes for which it was formed. So, for example, you could not buy as an investment property a high-rise office building and earn income from the rents. It's not allowed to do that. What it has to do with all of, virtually all, there are some very narrow exceptions, but virtually all of its funds are deposited with the state treasurer. The state treasurer elects how to invest those funds, and then it releases the funds to pay the obligations of CAWCB. So that actually goes to the fifth factor, in my view, and it shows that CAWCB is not autonomous. That's another one of the standards often applied by this Court and the Supreme Court is autonomy. CAWCB is far from autonomous. It is, yes, a district, but it's not the kind of district that Mount Healthy found wasn't an arm of the state of Ohio. Let me ask you something. So there was a trial. Damages were awarded in this case. Yes. Who's paying for those damages? I believe the district will pay for those damages. Well, isn't that the first factor, like whether any liability is paid for out of state funds? It is often construed that way, but I'll turn to it, and I'm aware of Your Honor's question about whether it was effectively raised, but the Stoner case and its functional liability versus legal liability. And, again, I'll turn back to the Alaska Railroad case where there are two statutes that expressly forbid making a judgment against the state. I think that Iguan and Alaska Cargo are unique in that they really are providing a central service to the entire state. Let me compare the Alaska Railroad, which serves four cities, three of which have deep water ports, all four of which have airports with commercial air traffic, and all are connected to each other by highways. So that railroad, I do not doubt that it performs a critical central governmental function for the state of Alaska, but it is not the only means by which Alaskans can move cargo or persons. It's the only railroad, right? I don't know that, but I'll accept that for purposes of argument that it is the only railroad. This is the only canal that takes Colorado River water from the river to the people of Arizona, the 80 percent of the people of Arizona who don't live on the river. So in that sense, it's equally critical in my view. The Department of Water Resources, in its brief, while it argues that CWCD is not an arm of the state, it does acknowledge its importance to the state. It says it repeatedly. Let me just quote a couple of things. Well, I'm important, but I'm not an arm of the state. So, you know, we can all claim we're important. It's, I think, the importance of the governmental function being performed. And for what it's worth, I guess, the Coleman case, which gave this issue its legs, in this case, that was the Court of Appeals of the state of Maryland, and it is an arm of the state of Maryland. Here, DWR acknowledges the importance of the function performed by CWCD. You were going to save seven minutes? You're down to four. I said several is what I meant to say. If you don't have any further questions, I will reserve and balance my time. Thank you. Seven, several. Close. I don't know. Good morning. May it please the Court. My name is Tamara Cook. I'm the attorney for the plaintiff and the appellee, Amy Gresset. Clearly, the central question for the court to decide is whether or not the state has created and treats CAWCD, the district, as an arm of the state of Arizona. I submit to you that the totality of the evidence presented to the court, both as part of the evidence attached to the briefs as well as the totality of the briefs, has one result available to it, and that is that the district is absolutely not an arm of the state. And by the amicus brief filed by the state of Arizona, it too concurs. The Supreme Court in 1977 in Mount Healthy specifically stated that the 11th Amendment does not apply, does not extend to counties and similar municipal corporations. But it went on to clarify that the real question is answered by looking at state law and how that state created the entity in question. By applying Arizona law to the five mental factors, again, there is one conclusion, that it is not an arm of the state. Let's start with factor number five that was raised during the course of the appellant's brief argument. Well, which is the most important factor? No question number one. No question. Why don't you start with number one? Because it folds into number one. So if you'll indulge me just for a quick moment, I'll make that link. As it relates to it being a municipal corporation, the entity was created by Arizona statute 48-3702. And in there it specifically states that the district in this case and other water districts like it are political subdivisions and municipal corporations that are entitled to immunities as dictated by the Arizona Constitution, Article 13, Section 7. The Arizona State Constitution specifically states that this entity, which among others is a tax-loving political improvement district, is entitled to the rights, privileges, benefits, and entitled to immunities and exemptions granted municipalities and political subdivisions by the state constitution, the law of the state of Arizona, and the United States Constitution. I submit to you, Your Honors, that nowhere in the state constitution does it specifically identify the district as either a state agency or a state instrumentality. Nowhere does it grant it the same immunities that the state itself is entitled to. All right. Well, I think one of your arguments, you cite Arizona revised statute, Section 48-3716, to argue that Arizona would not be liable for, I don't know, do we call this C-A-W-C-D or do you call it something else? What do you call it? It's easier to call it. What do you call it? The district. The district. Yes. Okay. For the district's debts if the district were to dissolve. But the district is arguing that it provides such an essential government function that Arizona would step in before dissolution. So doesn't your argument skip a step in the analysis? I would submit not. And the reason is this, Your Honor. Very clearly the district is relying on two key cases, and they've already been raised. One is Alaska cargo transport, and the other is on one versus the Commonwealth for the port authority out of the Mariana Islands. If we take a look at the elements that are set forth in the Alaska cargo case and we juxtapose the facts the court relied on there with the facts presented here, I would submit to you that even though in Alaska the court found that it was an arm, here the result necessarily has to be different. Let me touch on those five elements. One, as counsel has suggested, is that the railroad in Alaska was very unique, and it was essential. And there's no question that it was that uniqueness was important for the court's analysis. But I submit to you, contrary to the appellant, this district is not unique in this case. In fact, the state legislature for Arizona has enacted no fewer than one, two, three, four statutes that create additional water-related districts. 48-1011, 48-2301, 48-2901, 48-3401. They create domestic water improvement districts, agricultural improvement districts, irrigation and water conservation districts, irrigation water delivery districts. So while counsel suggests that it is unique, it is not. However, is water conservation in the state of Arizona important, just as it is in the Duren case where you're dealing with air pollution? Absolutely. But the services provided by the district at hand do not service all of the members of the state of Arizona. They only deal with the three counties in the state of Arizona. And I submit to the Senate. He said 80 percent of the people of the state out of those three counties. Is that right? Well, Your Honor, unfortunately that issue was never part of the discovery in this case. So I have no means by which to challenge that before the court today. For purposes of this argument, I will accept that to be true, and I would submit to the court that it's still not sufficient for the argument at hand. So that was the uniqueness. Two, which is really important in Alaska, the court created what it referred to as a financial safety net. What it meant by that is if the railroad ever found itself in a position of no longer being self-sustaining, rather than it disappearing and going off into the sunset, if you will, they have to go to the state legislature and get money to survive. Or the land that was deeded to it by the federal government would revert back to the federal government. So the state had an incentive to do that. In Arizona, not one statute says or can be inferred to say that it is intending to create a financial safety net such that if the district finds itself unable to be self-sustaining, that the state will step in. That I submit to you is an assumption on the part of the district, again, without any evidence to corroborate it. But what we do know is in the statutes that control the operations of the district, what happens is that if the district finds itself unable to pay its indebtedness, by Arizona law it is not allowed to go back to the state coffers. It must levy taxes against the three counties that it services and continue that levy until those debts are paid. If it goes so far as the district finds itself unable to continue operations at all, contrary to what the district believes that the state will step in and rescue it, the state law says otherwise. When it dissolves, all of its assets will be divided up and not sent back to the state coffers, which you would assume, if in fact it was an arm of the state, but would go to the three counties that it services. The third element of Alaska that renders it inapplicable in this case is also equally as important. The Alaskan legislature stated, quote, it is, quote, an instrumentality of the state within the Department of Commerce and Economic Development. By that language, Your Honors, it is specifically identifying it as an instrumentality of the state, which going back to Mount Healthy makes it necessarily an arm of the state. There is no such language in Arizona. How do you distinguish his argument regarding Mount Healthy's application? You know, he said that we can distinguish Mount Healthy, he said. I'm pretty sure that any case can be distinguished in a vacuum, but I would submit to you that Mount Healthy, the purpose of Mount Healthy really is to just establish that the court there and in the Beans' case later basically said, look, you need to look to the state law. This is not. But Mount Healthy's political subdivisions clearly are not. I mean, the Arizona statute says it's a political subdivision, right? Right, and Mount Healthy is not Arizona law, so it's not dictating how the Arizona law should apply or not apply to its subdivisions or its municipal corporations. It's simply saying that as a general principle, the 11th Amendment does not apply to those entities. Right. But in order to know for sure, you look to the state law. Does that answer your question? It does. Thank you. Okay, so the fourth element that's also very important in Alaska is the amount of control that the state exercises against the state. And it made a point of saying that all of the board members, the board being those that direct the operations of the railroad in Alaska, were appointed by the governor of the state of Alaska. Here, the 15 board members are elected within the three counties that the district services. The governor has nothing to do with those. One of the things that counsel made reference to in his briefs was the fact that the monies that are levied by the district are then deposited into the state treasury and that the state treasury somehow assumes some responsibility for that. And I would submit to you that that is absolutely not the case. The property, right? They have the ability to tax the property. Yes, ma'am. And that's the money that goes into the state. That's the argument there, right? Precisely. And I would submit to you that that's not unlike any of us having a bank account. When you look at the state legislation, the district is run by the 15-member board. The 15-member board comes from the counties. That board, among its list of responsibilities, is to collect that money, to deposit that money, to withdraw that money at its discretion, not the state treasurer, to invest that money, to apply it to the operations of the district. Again, the treasurer is nothing more than a bank, whereas the district, through its board, dictates what they do with those funds. And those board members, they are elected within each county then? Are they county officials? Well, I'm not sure about whether or not they're county officials. I believe it is an open election, but I defer on that because I'm not as familiar with that area of law. It would probably be in one of the statutes, right? I'm sorry? It would probably be in one of the statutes. It would, Your Honor. And I know that it details it quite a bit. I just don't have it committed to memory. I apologize. So based on those five factors, I submit to you that the Alaska cargo case can be easily distinguished from this case, and it does not give the solid foundation that the district hopes it would in order to justify it being mysteriously declared an arm of the state in the absence of either state statute, constitutional mandate, or even evidence that was presented in this case, which I'll get to in a minute. There was none. Do you know if this wider district has been sued in other cases? It has, Your Honor, on several different occasions. Has it asserted this defense before, do you know? No, and I appreciate you raising that question. In 2005, Smith v. CAWCD, the district ended up in front of the Ninth Circuit, and it was dismissed for grounds completely unrelated to the Eleventh Amendment. There is not one reference in a dicta, footnote, in passing, or directly that the district in that case ever made an attempt to assert its Eleventh Amendment rights to sovereign immunity. Now that we've ‑‑ well, I've touched on the Alaska cargo case. If I could briefly do so with respect to the Agawam case. I'm probably saying that wrong. I apologize. The Commonwealth case. In the Commonwealth case, again, it looked as if the court was relying on the uniqueness, because there, which is truly unique, we have one authority that handled all of the ports and all of the airports for the Mariana Islands. So it stands to reason on some levels that, in fact, if that entity, though it was intended to be self‑sustaining, would find itself unable to, that the Commonwealth of the Mariana Islands would step in and save it, or its economy would disintegrate. That was one of the rationales of the court. But importantly as well, the court relied on the fact that there, too, the Board of Directors was appointed by the governor. It was not ‑‑ they were not elected. Again, here they are elected. Also in the Commonwealth case, the court made reference to Section 2185 of that state's legislation, where it refers to the Commonwealth Port Authority as, quote, assuming all rights, obligations, and duties of the state. It goes on to say that the Commonwealth Port Authority, quote, acts for the state. I would submit to you that that language, if not directly, very strongly infers the fact that the state legislation in the Mariana Islands intended for this entity to be an arm of the state, and therefore it should not apply in this case as well. But the Binges case, I'm going to have to hurry, but the Binges case does apply. And if you look at the facts in that case, and I won't take the court's time to go through them here again, but the facts in the Binges case are identical to this, where the funds that were received by the district in Binges were local, they were here. Where the Binges district is working locally, even though it is a statewide interest, that is precisely what's being done here, three out of the 15. Where the state, excuse me, where the district in Binges was acting as an autonomous, self‑sustaining entity with no right of assistance from the state, the same exact thing takes place here. And then the ability to levy taxes has been identified in the Port Authority case of 1990, as well as the Binges case, both supporting the notion that the ability to levy taxes is critically important to showing that, in fact, an entity is not an arm of the state. And before I close and answer any remaining questions, let me end with this thought. I have not had an opportunity to speak with you about waiver, but let me submit to you that looking at pill versus blind industries would submit that, in this case, we have a situation where CAP undertook to hedge its bets. In its brief, it specifically stated that rather than pursue an interlocutory brief when it lost its motion for summary judgment, quote, rather than CAWCD chose to defend the case on the merits in an effort to defeat what it believed to be a meritless FMLA claim. I submit to you, Your Honors, they lost that bet. They lost a trial. They are not an arm of the state. And we ask the Court to uphold the district court's ruling in that regard. All right. Thank you, counsel. Thank you. Let's see. Mr. Stoudemire. Stoudemire. Okay. Thank you, Your Honor. We have time. A couple of quick points. First, Judge Callahan, you raised the question about Section 483716, and you are absolutely correct. The state of Arizona cannot contemplate the dissolution of the district. Without the district, there's no counterparty to the federal repayment contract or the operations and maintenance contract, and there is no water flowing through the Central Arizona Project. So it will never be dissolved. It has to be a viable entity. To go to a question that you asked, Judge Wardlaw, they are not county employees. They aren't even employees of CAWCD. They are elected officials. Yes, they are elected within each of the counties. And they serve without compensation other than per diems and that sort of thing. To go to the distinctions that counsel tried to make with regard to the Alaska Railroad, she noted there are four different types of water districts in the state of Arizona, and that's true. Only one of them, only one kind, this kind, the Central Arizona Water Conservation District, and only one of them, this is the only one, performs this function. It moves the water from the Colorado River to the people who need it. No other entity is authorized to do so. No other entity exists in Arizona. The other districts are completely unlike. In fact, what they are like are like the air quality districts in the Beaches case. There, there are 36 of those districts across the state of California. They are staffed by, in that case, the employee there was an employee of the county in question, Placer County, not an employee of the district. It was an ex officio, as the case said, employee of the district. So there there's an intimate relationship between the county and that district. Here there is no, there is no direct tie, neither CAWCD does not report to the counties, nor do the counties report to CAWCD. And so counsel said you have to look to how the state law analyzes this. And let me just close with, unless you've got specific questions, I'll close with the way Arizona law addresses what this district is and what it does. The 1971 act that authorized creation of CAWCD, it identified this water supply as vital. That's the word it used. The legislature used this word, vital to the future of Arizona. And it said that, I'm not finding the language, that it was essential to the future health, well-being, and safety of the state of Arizona and its citizens to quickly construct the CAP and thereafter manage it. That, to me, tells you all you need to know about what state law thinks of this entity and why it is indeed an arm of the state. All right. Any further questions? No. All right. Thank you very much, counsel. That was an excellent argument on both sides. Once again, you've been privileged today. So Gresset versus the district will be submitted.
judges: Wardlaw, Callahan, Kendall